IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| BRIAN J. PARSONS AKA PAUL GARZA MATHISON, | )<br>)<br>) |
| Petitioner, | )<br>) |
| v. | )<br>) |
| MARION FEATHER, Warden, FCI Sheridan, Federal Bureau of Prisons, RUSSELL E. BURGER, U.S. Marshal for the District of Oregon, | )<br>)<br>)<br>) |
| Respondents. | |

3:13-CV-01905-JO

OPINION AND ORDER

JONES, District Judge:

Petitioner Brian Parsons seeks review of the magistrate judge's order certifying him for extradition to Mexico to face criminal charges there ("Certification Order"). Such an order cannot be challenged on direct appeal but review is available by way of a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. *Manta v. Chertoff*, 518 F.3d 1134, 1140 (9th Cir. 2008); *Vo v. Benov*, 447 F.3d 1235, 1240 (9th Cir. 2006). Parsons contends the Certification Order violates his rights under the United States Constitution, the Extradition Treaty between the United States of America

-1-    OPINION AND ORDER

and the United Mexican States ("Extradition Treaty"),[1] and the United Nations Convention Against Torture ("CAT").[2] For the following reasons, the petition for writ of habeas corpus is DENIED and this action is DISMISSED.

## BACKGROUND

Parsons is an American citizen wanted in Mexico for allegedly fraudulent conduct in violation of the Criminal Code of the Mexican State of Michoacan. The Government of Mexico alleged that from March to May 2009, Parsons engaged in a fraudulent scheme to deprive Jose Jesus Bejar Ortiz ("Ortiz") of the equivalent of $235,374 in cash and a 2005 BMW automobile. On October 9, 2009, a Mexican court issued a warrant for Parson's arrest based on a criminal investigation completed by the prosecuting authority in the State of Michoacan.

Based on apparently unrelated criminal activity, Parsons was convicted in the United States of felony car theft and identity theft and received a sentence of consecutive 13-month terms of incarceration in the custody of the Oregon Department of Corrections. While Parsons was in state custody, the U.S. Attorney filed a complaint on behalf of the Government of Mexico seeking Parsons's extradition on the 2009 arrest warrant from Mexico. In September 2012, the district court issued a warrant and Parsons was arrested upon his release from state custody. He remains in federal custody.

Parsons opposed extradition and asked the magistrate judge to refrain from ruling on the extradition request pending proceedings in Mexico known as an "*amparo* proceeding" in which he

---

[1] Extradition Treaty, U.S.- Mex., May 4, 1978, 31 U.S.T. 5059.

[2] UN General Assembly, *Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment*, Dec. 10, 1984, 1465 U.N.T.S. 85.

challenged the 2009 arrest warrant under the Mexican Constitution. The magistrate judge denied Parsons's motion to refrain from ruling and conducted an extradition hearing in accordance with 18 U.S.C. § 3184, *et seq.* The magistrate judge certified to the Secretary of State of the United States that all legal requirements of the Extradition Treaty were satisfied and Parsons was eligible for extradition to Mexico for the offenses described in the extradition request. *In re Extradition of Paul Garza Mathison A/K/A Brian Jake Parsons*, 3:12-MJ-00142-1, 2013 WL 5431546 (D. Or. Sept. 26, 2013).

A habeas petition is the only avenue by which a certification for extradition may be challenged. *Manta*, 518 F.3d at 1140; *Vo*, 447 F.3d at 1240. On October 25, 2013, Parsons commenced the present action by filing his habeas petition under 28 U.S.C. § 2241.

## STANDARDS

The district court's habeas review of an order certifying an individual for extradition is limited to determining whether (1) the extradition magistrate had jurisdiction to conduct the proceedings and jurisdiction over the person named in the extradition request, (2) the treaty was in force, (3) the individual's alleged offense fell within the terms of the extradition treaty, and (4) there is competent evidence supporting the probable cause determination of the magistrate. *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925); *Manta*, 518 F.3d at 1140; *Vo*, 447 F.3d at 1240; *Mainero v. Gregg*, 164 F.3d 1199, 1205 (9th Cir. 1999).

## DISCUSSION

Parsons does not challenge the jurisdictional basis of the Certification Order or the legal force of the Extradition Treaty. He contends that the government failed to show his alleged offenses fall within the terms of the Extradition Treaty and that the evidence does not support the magistrate

-3-    OPINION AND ORDER

judge's probable cause determination. Parsons raises the additional claims that the original Mexican arrest warrant was invalid and that he is likely to be tortured if returned to Mexico.

### I.     Dual Criminality

Article 2 of the Extradition Treaty sets forth a dual criminality requirement which excludes an offense from the terms of the treaty unless it is considered criminal in both the United States and Mexico. Parsons contends the government failed to show that his alleged conduct would have been a crime if perpetrated in the United States.

Dual criminality is determined by comparing the essential character of the acts criminalized by the laws of both countries. *Manta*, 518 F.3d at 1141; *Emami v. United States District Ct.*, 834 F.2d 1444, 1450 (9th Cir. 1987). The crime need not be described by the same name or carry the same scope of liability and the elements of the alleged foreign crime need not be identical to the elements of the substantially analogous domestic crime. *Manta*, 518 F.3d at 1141. It is enough that the substantive conduct punished by the statute in both countries is functionally equivalent. *Emami*, 834 F.2d at 1450. In determining dual criminality, the foreign offense may be compared to a substantially analogous crime under federal law or under the law of the state where the extradition hearing is held. *Cucuzzella v. Keliikoa*, 638 F.2d 105, 107-08 (9th Cir. 1981).

Parsons is charged with fraud under the Michoacan Criminal Code. That offense is committed when a person "by means of deceit or taking advantage of a mistaken belief held by another person, illegally obtains, for themselves or a third party, an object or an unlawful profit." Pet. Ex. 8 at 23. The magistrate judge found the Mexican charge substantially analogous to fraud under the federal wire fraud statute, 18 U.S.C. § 1343, which punishes a person for obtaining money or property by means of false pretenses or representations.

As the magistrate judge found, the essential character of the Mexican offense is employing deceit toward or creating a mistaken belief in another person in order to obtain from that person an object of value or profit. The essential character of the acts criminalized by the federal wire fraud statute is using false or fraudulent representations or pretenses to obtain money or an object of value from another person. Both statutes punish theft by deception and stealing by false statements. The essential character of the acts criminalized by the Mexican and U.S. provisions is the same. Furthermore, I find the same essential character in the acts criminalized by the federal mail fraud statute, 18 U.S.C. § 1341, and the offenses involving fraud or deception under Chapter 165 of the Oregon Revised Statutes.

Parsons objects to the magistrate judge's finding of dual criminality because he is not accused of transmitting information by way of electronic communications. The federal wire fraud statute requires, as a jurisdictional element, the allegation that the defendant used wire communications in interstate commerce to further the fraudulent scheme. 18 U.S.C. § 1343. This argument has no merit because the Extradition Treaty provides that dual criminality shall not be defeated on the ground that use of the mails or other means of engaging in interstate commerce is an element for the purpose of obtaining federal jurisdiction. Extradition Treaty, U.S.-Mex., art. 2, 31 U.S.T. 5059.

Jurisdictional elements such as the use of the mails or the use of wire communications are not part of the essential character of the acts criminalized by the substantially analogous statutes in both countries. Accordingly, the absence of an allegation that Parsons used wire communications to perpetrate his deception is irrelevant to dual criminality. *Emami*, 834 F.2d at 1450.

\\\

\\\

## II. Probable Cause

Parsons contends the evidence before the magistrate judge was insufficient to support probable cause. An order certifying that a person is eligible for extradition is lawful only if the requesting nation has demonstrated probable cause sufficient to hold a defendant for trial under United States law. *Emami*, 834 F.2d at 1447. Under our federal law, probable cause requires reasonably trustworthy information sufficient to lead a reasonable person to believe that the accused person committed a criminal offense. *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). In determining probable cause, the court does not weigh conflicting evidence or make factual determinations, but decides only if there is competent evidence to support probable cause for the charged offense. *Quinn v. Robinson*, 783 F.2d 776, 815 (9th Cir. 1986).

In extradition proceedings, evidence is competent and admissible if it is properly authenticated pursuant to 18 U.S.C. § 3190. *Barapind v. Enomoto*, 400 F.3d 744, 748 (9th Cir. 2005); *Emami*, 834 F.2d at 1451. Parsons does not challenge the authentication of the evidence submitted with the extradition request. Parsons contends only that (1) the evidence is insufficient to show he intended to defraud Ortiz and (2) the witness statements are unreliable.

The government submitted sworn witness statements, bank records, a bill of sale for the BMW automobile, a contract for the sale of real property, an accountant's report confirming the total amount Parsons obtained from Ortiz, and an array of photographs from which Parsons was identified by witnesses to the transactions. From this evidence, a reasonable person could conclude that Parsons falsely presented himself as the owner of a company known as "Promotora Turistica de Uruapan" and as an authorized signatory on the bank accounts of that company. A reasonable person could conclude that Parsons induced Ortiz to lend him cash and to sell him a used BMW automobile

on credit by giving as security for the loans checks drawn on bank accounts which did not exist or over which he had no authority. Contrary to Parsons's arguments, the requisite criminal intent to defraud can reasonably be inferred from the totality of the circumstances described by the evidence. A person reasonably could infer that Parsons lied to Ortiz and gave false security for the loans because he did not intend to repay Ortiz.

Parsons contends the witness statements are dubious and unreliable because one of the witnesses is related to Ortiz, another is employed as his driver, and others are business associates. He suggests each witness's relationship to Ortiz provides motivation that undermines the reliability of the witness's statement. The witnesses gave their statements under oath and the transactions they describe are corroborated by the documentary evidence. Parsons offered no basis from which the magistrate judge could find the statements inaccurate except Parsons's own claim that he intended to repay the loans from funds he expected to receive in the future. The magistrate judge properly noted that Parsons's criminal history provided a basis to suspect the credibility of his explanation.

An extradition proceeding is not a criminal trial or a dress rehearsal for a criminal trial. The function of the magistrate judge is to determine whether there is competent evidence sufficient to sustain the charge, not to weigh conflicting evidence and determine whether the defendant is guilty. *Collins v. Loisel*, 259 U.S. 309, 316 (1922); *Barapind*, 400 F.3d at 750, 752; *Emami*, 834 F.2d at 1452. The magistrate judge properly conducted the circumscribed inquiry required in extradition proceedings and reasonably concluded that the evidence submitted with the extradition request supported probable cause to hold Parsons for trial.

\\\

\\\

-7-    OPINION AND ORDER

### III. Arrest Warrant

Parsons contends the Certification Order is invalid because the underlying arrest warrant was deficient under the law of Mexico. Parsons alleges deficiencies in the warrant based on the opinion of the attorney representing him in his *amparo* proceeding in Mexico. The deficiencies, however, do not challenge the substance of the evidence submitted with the extradition request which formed the basis of the magistrate judge's probable cause determination. Instead, the claimed deficiencies relate to whether the arrest warrant complied with technical and procedural requirements of Mexican law. Accordingly, the alleged deficiencies in the arrest warrant are beyond the scope of this court's habeas review, which is limited to questions of jurisdiction, dual criminality, and probable cause. *Manta*, 518 F.3d at 1140; *Vo*, 447 F.3d at 1240; *Mainero*, 164 F.3d at 1205.

### IV. Convention Against Torture

Parsons contends the extradition request is a pretext by which the Government of Mexico seeks to turn him over to local law enforcement personnel or narco-traffickers to be tortured and killed because he has unspecified knowledge of narco-trafficking and narco-financing. In support of this claim, Parsons relies on what he calls the general corruption of Mexican law enforcement and prison officials, what he believes are suspicious circumstances surrounding the extradition request, rumors among inmates that he is wanted by a Mexican drug cartel, and a letter from a friend warning that he is wanted by a criminal organization in Michoacan. Pet'r's Mem. 28-29.

Congress implemented the CAT in 8 U.S.C. § 1231, which declares it contrary to U.S. policy to extradite a person to a country where there are substantial grounds to believe the person would be subjected to torture. When a person for whom extradition is sought makes allegations regarding torture, it is the Department of State that must review and analyze the information and make a

recommendation to the Secretary of State who must then determine whether to surrender the person to the requesting country. 22 C.F.R. § 95.3(a). *Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956 (9th Cir. 2012).

The role of the courts is constrained to making a judicial determination whether extradition would be compatible with the applicable extradition treaty. *Lopez Smith v. Hood*, 121 F.3d 1322, 1326-27 (9th Cir. 1997). The courts have no authority to consider issues of foreign policy, humanitarian concerns, or other considerations that might influence the decision of the Secretary of State whether to extradite. *Prasoprat v. Benov*, 421 F.3d 1009, 1016-17 (9th Cir. 2005).

The magistrate judge determined that the allegations against Parsons fell within the terms of the Extradition Treaty and that the evidence supported probable cause. Having made that judicial determination, he had no authority to refuse to issue a certificate for extradition on the basis of Parsons's allegation that he may be treated inhumanely. Parsons must direct his arguments based on the CAT to the Secretary of State.

## CONCLUSION

Petitioner's motion for a writ of habeas corpus under 28 U.S.C. § 2241 is DENIED and this action is DISMISSED.

IT IS SO ORDERED.

DATED this 19th day of May, 2014.

Robert E. Jones
United States District Judge